UNITED STATES of America, Appellee,

v.

Norberto OSORIO and Jesus
A. Castro, Defendants,

Jesus A. Castro, Defendant–Appellant.

No. 1152, Docket 90–1665.

United States Court of Appeals,
Second Circuit.

Argued April 19, 1991.

Decided Nov. 6, 1991.

Lawrence M. Herrmann, New York City, for defendant-appellant.

Burton T. Ryan, Jr., Asst. U.S. Atty., E.D.N.Y. (Andrew J. Maloney, U.S. Atty., David C. James, of counsel), Brooklyn, N.Y., for appellee.

Before MESKILL, PRATT, and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Drug Enforcement Task Force agents made a warrantless nonconsensual entry into an apartment where appellant Castro was a guest and was sleeping. The agents searched the apartment and seized several items. The sole issue on this appeal is whether Castro's Fourth Amendment rights were violated by the search. We find that they were.

## BACKGROUND

We first briefly summarize the relevant facts. On September 22, 1989, Castro entered the United States as a resident alien. Finding his former residence in Queens, a basement apartment, to be cold and damp, he stayed at his girlfriend's house until September 26. On September 26, his former roommate and co-defendant Norberto Osorio telephoned Castro at the home of his girlfriend and invited him to have a few drinks with him at the home of James Cardenas—the second floor apartment of the building located at 99–54 63rd Ave., Forest Hills, Queens. Castro had known Cardenas for eight or nine years, and considered him a friend. At the suppression hearing, Castro testified through an interpreter that Osorio had invited him to Cardenas's to "stay with [Osorio] so we could talk for a while and take a few drinks." Castro further testified that Osorio told him that Osorio had spoken to Cardenas and that they agreed that "we should meet in James' house, we should talk for a while ... and then we should have a few drinks."

Castro arrived at Cardenas' apartment at about ten p.m. on the evening of September 26. The apartment has three bedrooms, two bathrooms, and a kitchen and living area. Cardenas was present at the apartment, as was Miguel Ruiz, whom Castro had met earlier that day. Castro testified that upon arrival, he took a look around the apartment. The doors of the various rooms were open. The three sat around in the living area of the apartment and talked, waiting for Osorio.

Osorio, who had been arrested elsewhere, never arrived. Castro testified that he had received an invitation to sleep at Cardenas' apartment. In any case, the three retired to bed shortly after midnight. Castro and Cardenas shared a bunk bed in one of the bedrooms right off the kitchen; Ruiz slept in another bedroom. Before going to sleep, Castro undressed, except for his pants. He then went to sleep in the lower bed of the bunk bed; Cardenas occupied the upper bed.

At approximately 2:00 a.m., six or seven members of the Drug Enforcement Task Force knocked on the front door of the apartment building. The first floor resident and building owner, Jose Bravo, admitted the officers. They proceeded to the second floor, knocked on the door, and shouted, "Police." Cardenas opened the door and the officers came in. Cardenas refused to grant the officers his consent to search the apartment.

By this time, Castro had emerged from the bedroom, and Ruiz was in the kitchen. The officers directed Ruiz, Cardenas, and Castro to sit at the kitchen table. The agents immediately began to search the apartment and seize evidence without a warrant. About three hours later, at 5:00 a.m., an oral search warrant was issued. By 5:30 a.m., the search was concluded and Ruiz, Castro, and Cardenas arrested. From the kitchen, the officers seized a kilogram of cocaine, apparently from a garbage can, and a money counting machine and two boxes of ammunition. The government also seized approximately $65,000 in cash and two guns from the bedroom in which Castro and Cardenas had been sleeping, and a pink shirt from Ruiz's bedroom.

Following their indictment with Osorio for conspiring to distribute and possess cocaine with intent to distribute and two counts of possession of cocaine with intent to distribute, defendants Ruiz, Castro, and Cardenas moved to suppress the physical evidence seized during the search. The district court granted the motions of all the

defendants except Castro. As to Castro, the district court held that because Castro was merely a casual visitor to Cardenas' apartment, his Fourth Amendment rights had not been violated by the illegal search. The district court found that Castro had not been invited to stay overnight, but was only in Cardenas' apartment in order to meet Osorio. At the time of Osorio's arrival, the district court found, both would depart and Castro would be Osorio's invited overnight guest.

Castro pleaded guilty conditionally to conspiring to distribute and possess cocaine, pursuant to Fed.R.Crim.Pro. 11(a)(2). He was sentenced to 33 months imprisonment followed by three years of supervised release. His plea is conditioned upon the outcome of this appeal.

## DISCUSSION

■ On appeal, the government does not contest the illegality of the search and seizure of the items in Cardenas' apartment. Rather, the only issue is whether the search and seizure violated Castro's Fourth Amendment rights. *See Rakas v. Illinois*, 439 U.S. 128, 138–39, 99 S.Ct. 421, 427–28, 58 L.Ed.2d 387 (1978) (framing question to be one of "particular defendant's rights under the Fourth Amendment," rather than one involving "standing"). We review the question of whether a defendant's Fourth Amendment rights were violated by a governmental action *de novo*, although we review the district court's determination of underlying facts for clear error. *United States v. Davis*, 932 F.2d 752, 756 (9th Cir.1991).

■ The party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. *Rakas v. Illinois*, 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978); *United States v. Davis*, 932 F.2d 752 (9th Cir.1991). The movant must show that he had an expectation of privacy in the invaded place and that the expectation was legitimate, one that society is prepared to recognize as reasonable. *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516–17, 19

L.Ed.2d 576 (1967) (Harlan, J., concurring); *Rakas v. Illinois*, 439 U.S. at 140–41, 99 S.Ct. at 428–29; *United States v. Paulino*, 850 F.2d 93 (2d Cir.1988). In evaluating these claims, the court generally considers whether the defendant had any property or possessory interest in the place searched or the items seized. *Rakas v. Illinois; United States v. Paulino; United States v. Davis*, 932 F.2d 752, 756 (9th Cir.1991); *United States v. Burnett*, 890 F.2d 1233 (D.C.Cir.1989).

Castro concedes that he had no property or possessory interest in the items seized. Castro argues, however, that the district court was clearly erroneous in concluding that he was not an overnight guest and that, as an overnight guest, Castro's Fourth Amendment rights were violated by the search. He cites *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), in which the Supreme Court held that the warrantless arrest of an overnight guest in the home of another violated the guest's Fourth Amendment rights.

■ We turn first to the issue of whether Castro was in fact an overnight guest at Cardenas' apartment. The district court's conclusion that Castro was not an overnight guest was predicated upon the finding that Castro was to be an overnight guest of Osorio's, "at Osorio's apartment, probably [in Queens]." Mem. of June 20, 1990, at 3.

The record does not support this finding. Castro did not testify that Osorio had invited him to Osorio's apartment. Rather, Castro's testimony was that Osorio had invited Castro to "stay with [Osorio] so we could talk for a while and take a few drinks." The purpose of the invitation was clearly for conversation and entertainment. Even if the word "stay," taken alone and as translated from the Spanish, could be construed to imply an overnight invitation, Osorio had not invited Castro to Osorio's house. Rather, the invitation was to the home of Castro's long-time friend Cardenas, to "talk for while ... and then [ ] have a few drinks."

Whatever the state of the invitations that led Castro to Cardenas' apartment, however, after Osorio failed to show up, the only reasonable conclusion is that Castro became an overnight guest of Cardenas. It was at that time, not previously, that Castro received an overnight invitation. At the suppression hearing, the following exchange took place:

Q: Did anyone invite you to stay over and sleep [at Cardenas' house in Queens]?

A: Yes.

Castro never specifically stated whether it was Cardenas or Ruiz who issued the invitation to stay overnight at Cardenas' house. In any event, Cardenas shared his bedroom with Castro, who, half undressed, retired to bed at the same time as Cardenas. Thus, it is inescapable that Cardenas permitted Castro to stay in his apartment for the night. That is all that *Olson* requires to qualify as an overnight guest. In *Olson*, the defendant's guest status rested on the fact that he "spent the night of the robbery on the floor of the Bergstrom's house, with their permission." *Id.* 110 S.Ct. at 1688 n. 6.

We accordingly conclude that the district court was clearly erroneous in finding that Cardenas' apartment served only as a "meeting place" for Castro and Osorio and that Castro was not an overnight guest at Cardenas' apartment.

Castro maintains that under *Olson*, the warrantless, nonconsensual search of the apartment in which he was staying as an overnight guest violated his Fourth Amendment rights. We agree. In *Olson*, the Court held that an overnight guest has a "legitimate expectation of privacy in his host's home." 110 S.Ct. at 1689. The Court declined to determine whether the defendant had a property or possessory interest in the place or in any part of it, or any ability to exclude others from the premises. *Id.; compare Rakas v. Illinois*, 439 U.S. at 142, 99 S.Ct. at 429–30; *United States v. Burnett*, 890 F.2d 1233 (D.C.Cir. 1989) (transient dozing when apartment searched had no property interest and no right to exclude others); *United States v.*

*Paulino*, 850 F.2d 93 (2d Cir.1988) (backseat passenger in car who had no control over car interior and no right to exclude others had no legitimate expectation of privacy under rubber mat in backseat). Rather, the court reasoned that an overnight guest could depend on his host to protect his privacy interests and to provide a "place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside." *Olson*, 110 S.Ct. at 1689. It therefore concluded that "Olson's status as an overnight guest is alone enough to show" that he had a legitimate expectation of privacy in the premises. *Id.* at 1688.

Of course, that expectation will not always extend to the entire premises. A guest can not have even a subjective expectation of privacy in those areas of the host's home that are off limits to the guest or of which the guest has no knowledge. *See id.* at 1689. Where the guest does not have a subjective expectation of privacy, we need not consider whether that expectation would be reasonable. *See Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, J. concurring). However, the government has not argued, and there is no suggestion in the facts of this case, that some parts of the premises were off limits to Castro or outside his awareness. Thus, if *Olson* applies, Castro had standing to object to this illegal search.

The government argues, however, that *Olson* is limited to arrest cases, and although an overnight guest's Fourth Amendment rights may be violated by his warrantless arrest in the home of another, he may not be heard to complain of a warrantless search of that home. We disagree. Nothing in *Olson* supports the government's limited interpretation of it. First, the *Olson* court did not focus on the object of the government's actions, be it to arrest an individual or to seize evidence. *Cf. Rakas v. Illinois*, 439 U.S. at 134–35, 99 S.Ct. at 425–26 (expressly rejecting "target theory" of standing). Rather, it formulated the Fourth Amendment issue as whether a person had a legitimate expecta-

**42**

tion of privacy in a particular place. Reasoning that an overnight guest has a legitimate expectation of privacy in his host's home, the Court concluded that when a search or seizure invades those premises, it follows that the Fourth Amendment rights of the guest have been violated.

Furthermore, we observe that the Court analyzed and relied upon several search cases in rendering its decision. It drew no distinction between warrantless arrests of individuals in particular locations and searches of those locations. *Olson,* 110 S.Ct. at 1687–88 (citing *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (car search); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (eavesdropping in phone booth); *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) (apartment search)).

In this case, the record clearly indicates that Castro was an overnight guest of Cardenas. Under *Olson,* he had a legitimate expectation of privacy in Cardenas' apartment, and his Fourth Amendment rights as to those places were violated by the officers' warrantless, nonconsensual search. We note that all of the challenged physical evidence except the pink shirt in Ruiz's bedroom was found in the kitchen area and in the bedroom in which Castro had been sleeping—areas to which Castro unquestionably had access as an overnight guest.

### CONCLUSION

The judgment of conviction is hereby vacated and the case remanded for proceedings not inconsistent with this opinion.

GEORGE C. PRATT, Circuit Judge (dissenting):

I respectfully dissent.

There is sufficient testimony in this record to support the finding of the district judge that Castro was not an overnight guest within the meaning of *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). Based on all the evidence before him the district court found that Castro's stay at Cardenas's apartment

"was only to await Osorio's return". While the language used by Castro in his testimony, elicited through an interpreter, was not crystal clear, it is the function of the district court, not this court, to determine what was meant by the words used. Since I find no error in the district judge's findings, much less clear error, I would affirm his conclusion that Castro lacked standing to suppress the incriminating evidence found in Cardenas's apartment.