**UNITED STATES of America, Appellee,**

v.

**Chafat Al JIBORI, also known as Jari Into Kalervo Lundkvist, Defendant–Appellant.**

**Docket No. 97–1462.**

United States Court of Appeals, Second Circuit

Argued May 8, 1998.

Decided June 30, 1998.

Henriette D. Hoffman (The Legal Aid Society Federal Defender Division Appeals Bureau, New York City, of counsel), for Defendant–Appellant.

David B. Pitofsky, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, Barbara D. Underwood, Chief Assistant United States Attorney, Brooklyn, NY, of counsel), for Appellee.

Before: FEINBERG and PARKER,
Circuit Judges, and SPATT, District Judge.*

PER CURIAM:

Chafat Al Jibori ("Al Jibori") appeals from the judgment of the United States District Court for the Eastern District of New York (Carol B. Amon, *Judge*) entered May 30, 1997, denying his motion to dismiss his indictment for presenting a false passport on the ground of selective prosecution.

## I.  BACKGROUND

Al Jibori, an Iraqi, arrived at New York's Kennedy airport from Romania on September 2, 1994 holding a forged passport from Sweden. The passport had been photo-substituted; that is, Al Jibori's picture had been pasted over the original owner's photograph. Al Jibori stated that he was entering the United States to seek political asylum. Immigration officials informed Al Jibori that he could either return immediately to Romania or he could go before an immigration judge to pursue his asylum claim. Al Jibori chose the latter option.

Two months later, Al Jibori was indicted for a violation of 18 U.S.C. § 1543 for presenting a false passport at Kennedy. The government acknowledges that Section 1543 is a relatively uncommonly used statute.[1] Al Jibori moved to dismiss the indictment based on selective prosecution claiming specifically that he was prosecuted because of his national origin. The government responded by letter and affidavit stating that although only four people in the last five years had been prosecuted under Section 1543, 140 people from all areas of the world had been prosecuted under 18 U.S.C. §§ 1542, 1544 and 1546, which are also passport offenses. The district court asked the government to narrow the scope of its data to those cases where the defendant was charged with presenting a fake passport.

Rather than undertake this arduous administrative task, the government sought to defeat Al Jibori's motion by filing an affidavit. The affidavit of Assistant United States Attorney Jonathan Sack stated that the decision to prosecute Al Jibori was based on the similarity between his case and that of a terrorist convicted of the World Trade Center bombing: that is, they were both Middle Eastern and both were traveling on altered Swedish passports. At a hearing on the motion, the government acknowledged that the fact that Al Jibori was from the Middle East played a role in his prosecution. The district court found that the similarity between Al Jibori's case and that of the known terrorist was a sufficient good faith basis for prosecuting.

Al Jibori was convicted of the Section 1543 offense by a jury and received three years probation. In a separate proceeding, he was granted political asylum. He appealed the denial of his selective prosecution motion (and the sufficiency of his underlying conviction) to a panel of this Court. The Court, with one judge dissenting, remanded the case to the district court for further inquiry into the selective prosecution defense in light of

---

* Honorable Arthur D. Spatt, of the United States District Court for the Eastern District of New York, sitting by designation.

1.  This may be explained by the fact that many individuals caught with forged passports choose to return to the country from whence they came rather than face criminal charges in the United States.

the government's acknowledgment that it had, in part, considered Al Jibori's country of origin in its decision to prosecute. *See United States v. Al Jibori,* 90 F.3d 22 (2d Cir. 1996). The Court stated, "[w]e do not envision that the government would have to produce a great deal of additional evidence to warrant denial of defendant's motion." *Id.* at 26.

On remand, the government put forward additional evidence describing other prosecutions for violations of the various passport offenses. The district court found that there were eight substantially similar prosecutions during the relevant time period and that five of the eight were of individuals who were not from the Middle East (all were from Guyana). The court concluded that the government had met its burden of production and dismissed Al Jibori's motion.

## II. DISCUSSION

■ We review the district court's factual findings for clear error, *United States v. Osorio,* 949 F.2d 38, 40 (2d Cir.1991), and the court's decision not to dismiss the case *de novo. United States v. Thompson,* 35 F.3d 100, 103 (2d Cir.1994). The Supreme Court has recently held that in selective prosecution cases "the presumption of regularity supports [prosecutors'] prosecutorial decisions and in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Armstrong,* 517 U.S. 456, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687 (1996) (internal quotations and citations omitted).

■ We find no clear error in the district court's determination that there were eight substantially similar prosecutions, five of which were of individuals from outside of the Middle East. Al Jibori argues that the five Guyanese were prosecuted for passport offenses because they were part of a larger "alien smuggling ring." Thus, he asserts, their prosecutions are not substantially similar to Al Jibori's. We do not believe that the district court was required to look behind the prosecutions of the five Guyanese to determine whether the government had a common motivation for prosecuting them. Furthermore, even if we were willing to assume—

despite the absence of clear evidence presented by Al Jibori—that the government prosecuted each of the five Guyanese because it suspected they were tied to a common scheme to illegally enter the country, this would only tend to support the government's claim that it prosecuted Al Jibori not because he was Middle Eastern, but because the government was attempting to locate a common source for the two altered Swedish passports.

■ Further, we agree that it was proper to deny the motion. Although the prior panel required the government to put forward some evidence supporting a good faith basis to prosecute, Al Jibori, "[t]he party alleging that he has been the victim of intentional discrimination[,] carries the ultimate burden of persuasion." *Batson v. Kentucky,* 476 U.S. 79, 94 n. 18, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (citing supporting cases). Al Jibori came forward with no evidence supporting his claim and thus failed to carry his burden.

## III. CONCLUSION

The decision of the district court is affirmed.