**Elias GUZMAN, Petitioner,**

v.

**John SABOURIN, Superintendent, Respondent.**

**No. 00 Civ. 1358(RWS).**

United States District Court, S.D. New York.

Dec. 4, 2000.

**830**

Elias Guzman, Malone, NY, pro se.

Honorable Eliot L. Spitzer, Attorney General of the State of New York, New York, NY (Melinda Chester–Spitzer, Assistant Attorney General, of counsel), for respondent.

## OPINION

SWEET, District Judge.

Petitioner Elias Guzman ("Guzman"), a prisoner in state custody, brings this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254(b). He alleges that (1) his guilty plea was not voluntary, knowing or intelligent due to the fact that he was heavily medicated during the allocution; (2) his trial counsel rendered ineffective assistance in violation of the Sixth Amendment both by making a crucial legal error and by testifying in opposition to Guzman's subsequent motion to withdraw his guilty plea; and (3) the trial court's failure to appoint new counsel violated his due process and equal protection rights under the Fourteenth Amendment. For the reasons discussed below, the case is remanded to

1. No transcript has been introduced documenting the proceedings of March 3, 1997.

the state court for an evidentiary hearing on the motion to withdraw the plea with new counsel.

### Prior Proceedings

In 1996, Guzman was charged with first-degree robbery in the Supreme Court, New York County. On March 3, 1997 at a hearing before the Honorable Harold J. Rothwax, Guzman stated that he was unhappy with his attorney, Joseph Ronson ("Ronson"), and wished to be assigned new counsel. One of the grounds for the motion, as Ronson told the court, was that, in bringing a motion to suppress, he had mistakenly conceded that Guzman had possessed a box-cutter on his person, whereas in fact, the box-cutter had been discovered on the ground one or two feet away when Guzman was arrested.[1] Judge Rothwax allowed the defense to amend the motion to reflect Guzman's contention that he did not possess the box-cutter, denied the motion to suppress as to the box-cutter for lack of standing, and denied the motion for reassignment of counsel.

The next day, Guzman appeared before the Honorable Michael Gross for a *Wade* and *Mapp* hearing. Before the hearing began, Judge Gross inquired whether the parties had discussed possible dispositions. The prosecutor stated that the People had offered Guzman a plea carrying a sentence of nine years, with the People's recommendation to increase to twelve years after the hearing. If convicted after trial, Guzman would have faced a statutory maximum determinate sentence of twenty-five years as a second felony offender.

Guzman then addressed the court and asked to be assigned new counsel due to Ronson's admitted error regarding the box-cutter. "I don't understand. This is my life we're talking about," Guzman stated. Resp. Ex. C at 4. Judge Gross denied the motion, finding that he was bound by Judge Rothwax's legal finding that Ronson was providing "effective, competent, repre-

The facts as set forth above have been agreed upon by the parties.

sentation" such that "there was no basis at all for challenging the representation [Guzman] received." *Id.* at 5.

Judge Gross then again asked the parties if a plea was possible. Ronson stated that he and Guzman were not communicating effectively, and the hearing was adjourned briefly. After the parties returned, Ronson stated that he had discussed the possibility of a guilty plea with Guzman. Ronson informed the court that Guzman was suffering from "significant pain" due to carpal tunnel syndrome, for which Guzman had taken "considerable medication," *id.* at 13–14. Ronson stated that he was "not in position ... to assess what I believe to be an affect [sic] on his ability to understand the proceedings here" but suggested that Guzman might be amenable to a disposition nonetheless, despite the fact that Ronson had not met with Guzman once during the previous month and that they "weren't done speaking" when the case was recalled that day. *Id.* Ronson stated that Guzman was interested in pleading guilty if the court would follow the People's request that a sentence of no more than nine years be imposed, and if Guzman could be transferred to the hospital at Riker's Island for treatment, *see id.* at 15–17. The court agreed, and Ronson stated that Guzman intended to withdraw his plea of not guilty and enter a plea of guilty.

The allocution was not a model of clarity. When Judge Gross first asked Guzman whether he wished to plead guilty, Guzman replied "yes. " *Id.* at 22. But, when asked if he had been given enough time to confer with his attorney, Guzman replied, "Yes. We talked about it. I wanted to know if I could have more time to think about it. I don't know if it's possible. Is it possible?" *Id.* The court offered to delay the allocution for thirty minutes to give Guzman time to consider this "crucial decision," but Guzman stated that he was ready to continue. When asked if he was satisfied with the advice Ronson had given him, Guzman replied in the affirmative.

However, when asked to admit to the substantive elements of the crime, Guzman did not respond, and the allocution was delayed for another twenty minutes.

When the hearing resumed, Judge Gross stated the charge as set forth in the indictment and asked Guzman if the facts asserted therein were true, to which Guzman replied, "No." *Id.* at 25. After the attorneys informed the judge of the details of the crime, Ronson stated "I spoke to Mr. Guzman. I haven't heard anything in my discussions with him which would require me to tell the Court there was no legal or factual basis for a guilty plea in this case. He wishes you to consider and continue the allocution that started earlier." The allocution then resumed again, and Guzman gave satisfactory answers until he was asked what weapon he used in the commission of the attempted robbery. He replied, "Whatever they have. I don't know. [Pause] A sharp object." *Id.* at 30.

After ascertaining that this allocution was acceptable to the prosecutor, the judge then went on to advise Guzman of all the rights he was waiving by pleading guilty. However, although Ronson had stated on the record that Guzman had taken "considerable medication," and there had been difficulties in the allocution, *id.*, the judge did not make any inquiries as to the effect of that medication on Guzman before he accepted the plea.

At sentencing on April 7, 1997, Ronson notified Judge Gross that Guzman had prepared a pro se motion to withdraw his guilty plea and for appointment of new counsel. After Ronson summarized Guzman's various grounds for the motion in an extensive colloquy with the judge, the prosecutor derisively dismissed the allegations. *See id.* at 17–18 ("He can sit here from now until dooms day [sic] as far as I'm concerned and say he's innocent. He's being framed and all the reference of his nonsense, but it's not happening. Now as to his other claims, and for him to somehow say that you [sic] some improper con-

tact between myself and Mr. Ronson is absolutely ridiculous.").

Of the several claims raised in Guzman's motion, Ronson identified the coercion claim as having the most merit, and suggested that Guzman should be appointed counsel given the obvious conflict of interest raised by having Ronson argue his own ineffectiveness. In relevant part, the subsequent exchange is set forth below:

> Court: ... again I'm not trying to intrude on the confidential aspect of your relationship with Mr. Guzman, but are there any other communications that argubly [sic] that would support the claim of coersion [sic] on Mr. Guzman's part by counsel?"
>
> Ronson: No. There's an error in the— his characterization of his exposure after trial, and that appears in two pages of his letter which supports his motion. He faces twenty-five years in prison. That's a huge amount of time. He does not face twenty-five years to life in prison. As for anything else, unfortunately I believe my communication with him are protected by the attorney/client privilege at this point.

*Id.* at 22.

Guzman was then given the opportunity to state the detailed grounds for his motion on the record, including his claim that he was over-medicated at the time of the plea, that the defense attorney and prosecutor had engaged in improper communications, and that the proof of his innocence was that his carpal tunnel syndrome rendered him physically unable to commit the crime charged. Ronson then stated, "If I was in receipt of information that the defendant was disoriented, and unable to proceed to hearing and trial, I would have made that plain to the Court." *Id.* at 28–29.

Although the court accepted the proffer that Guzman had been medicated on the date of the allocution, *see id.* at 29, the court denied the motion to withdraw the plea:

> Court: I'm satisfied based on my careful and meticulous notes, that Mr. Guzman's plea was knowing, voluntary, intelligent. ... Further, it would appear that the plea withdrawal motion is really based simply on Mr. Guzman's not wanting to proceed with the negotiated sentence, rather then [sic] any claim of coercion.
>
> Guzman: No. I would like to go to trial.
>
> Court: Mr. Guzman, you will be arraigned for sentence at this time.

*Id.* at 29–31. After both attorneys presented arguments, the judge asked Guzman if he wished to make any statement, to which he replied, "Yes. I don't understand it. I don't. I want my plea back. I want to go to trial." Id. at 35. Guzman was sentenced to nine years in prison, the execution of which was stayed until May 19, 1997, so that Guzman could receive medical treatment for his carpal tunnel syndrome.

On April 24, 1997, Guzman filed a direct appeal of his conviction to the Appellate Division, First Department, on the grounds that (1) his plea was not entered knowingly, voluntarily and intelligently; (2) that he received ineffective assistance of counsel; and (3) that the trial court should have appointed new counsel after Guzman's motion to withdraw his plea. The Appellate Division affirmed the conviction on October 6, 1998. *People v. Guzman,* 254 A.D.2d 37, 678 N.Y.S.2d 715 (N.Y.App.Div.1998).

On May 10, 1997, Guzman again sought to withdraw his guilty plea in the Supreme Court, New York Count, which the Judge Gross treated as a motion to set aside the judgment of conviction pursuant to N.Y. C.P.L. § 440.10. Relying on his prior findings, Judge Gross denied the motion. *See People v. Guzman,* No. 7996/96, Decision and Order of August 20, 1997.

Guzman filed a motion for reconsideration on September 11, 1997, which was denied. The Appellate Division denied

leave to appeal that decision on February 26, 1998.

The New York Court of Appeals denied leave to appeal on January 26, 1999.

## Discussion

### I. Legal Standard for Habeas Corpus Petitions Brought Pursuant to 28 U.S.C. § 2254

Section § 2254 of the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA") provides a federal remedy for state prisoners if their continued custody is in violation of federal law. Pub.L. No. 104–132, 100 Stat. 1214, codified at 28 U.S.C. § 2254(a); see Chandler v. Florida, 449 U.S. 560, 571, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981) ("This Court has no supervisory authority over state courts, and, in reviewing a state court judgment, we are confined to evaluating it in relation to the Federal Constitution."). Errors of state law are not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 71–72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); Wainwright v. Sykes, 433 U.S. 72, 81, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Petitioners bear the burden of proving violations of federal law by a preponderance of the evidence. See Jones v. Vacco, 126 F.3d 408, 415 (2d Cir.1997).

Federal habeas courts must presume State courts' factual findings to be correct, 28 U.S.C. § 2254(e)(1), and may not grant relief unless they find that the state court's adjudication of the merits of the claims either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); see Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000).

In addition, in order for a federal habeas court to address the merits of constitutional claims, a petitioner must have "exhausted" his claims by pursuing them in the state court system until no further avenue of relief is available there. 28 U.S.C. § 2254(b), (c); see Keeney v. Tamayo–Reyes, 504 U.S. 1, 9–10, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) (reaffirming that a state prisoner must exhaust state remedies before a writ of habeas corpus may be granted by a federal court); Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). As Guzman has raised each of the claims in this petition in the state courts, his claims have been exhausted and are ripe for habeas review.

### II. Ineffective Assistance of Counsel

Guzman alleges that his trial counsel rendered constitutionally ineffective assistance due to the fact that Ronson (1) did not visit, inform Guzman of the filing of motions, conduct any investigation or more to get his bail reduced; (2) mistakenly asserted that Guzman had been in possession of the box-cutter in support of a motion to suppress; (3) coerced him into pleading guilty; and (4) abandoned his role as an advocate by testifying against Guzman's motion to withdraw his plea on the grounds of coercion despite the obvious conflict of interest involved.

In order to show that counsel was constitutionally ineffective, a petitioner must show (1) that the representation fell below an objective standard of reasonableness measured by prevailing professional norms; and (2) prejudice. Strickland v. Washington, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064–65, 2068, 80 L.Ed.2d 674 (1984). Prejudice exists where a petitioner can show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 466 U.S. at 694, 104 S.Ct. at 2068. A "reasonable probability" is "a probability sufficient to under-

mine confidence in the outcome." *Id.* The *Strickland* standard applies to ineffective assistance claims arising in the context of guilty pleas. *See Hill v. Lockhart,* 474 U.S. 52, 57–58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

First, Guzman's claims that his attorney was deficient for failing to visit, investigate or attempt to reduce bail have no evidentiary support. The only indication of Ronson's pretrial conduct is in the plea minutes, in which Ronson admits that he had not seen Guzman in the prior month, *see* Resp. Ex. C at 13, but nonetheless evinces a thorough understanding of the prosecution's evidence, available defense strategies, as well as Guzman's personal circumstances and concerns. Moreover, Guzman has not alleged what further investigation should have been conducted, or how it would have affected his case.

Second, the motion to suppress the box-cutter, which Ronson admitted had been filed in error, had no effect on Guzman's case. Guzman argues that because Ronson erroneously asserted that Guzman had possession of the box-cutter in the motion to suppress, and then rectified that error before the court, the court dismissed the motion although it "had a high probability of successfully suppressing all mention of [the box-cutter] at trial." Pet. at Supp. 1.

Ronson's statement did cause the *Mapp* hearing to be cancelled with respect to the box-cutter. But this was due to a correct application of the legal concept of "standing" rather than due to any error on Ronson's part. A criminal defendant only has standing to bring a motion to suppress evidence if he has a possessory interest in the evidence he is seeking to suppress. *See Mercado v. U.S. Customs Service,* 873 F.2d 641, 644 (2d Cir.1989); *People v. Brown,* 256 A.D.2d 42, 682 N.Y.S.2d 32 (N.Y.App.Div.1998), *lv. denied,* 93 N.Y.2d 871, 689 N.Y.S.2d 433, 711 N.E.2d 647 (1999). Because the box-cutter was not found on Guzman's person, but rather on the ground several feet away, and there was no other indication that the box-cutter

was his, Guzman had no possessory interest in it sufficient to give him the right to bring a motion to suppress. *See United States v. Osorio,* 949 F.2d 38, 40 (2d Cir. 1991); *Martin v. McClellan,* No. 97 Civ. 7485(DC), 2000 WL 640662, *3 (S.D.N.Y. May 17, 2000). Therefore, counsel was not deficient in any way regarding the box-cutter, and Guzman suffered no prejudice from the lack of a hearing as a result of Ronson's actions because he was not entitled to one as a matter of law.

Finally, Guzman alleges that Ronson rendered constitutionally ineffective assistance due to the conflict of interest created when Ronson abandoned his role as an advocate by testifying against Guzman's motion to withdraw his guilty plea. In order to establish a claim of ineffective assistance of counsel due to a conflict of interest in the context of a guilty plea, a petitioner must show: (1) there was an actual conflict of interest; and (2) the conflict adversely affected the voluntary nature of the guilty plea. *See Hill,* 474 U.S. at 59, 106 S.Ct. 366; *Bello v. People of the State of New York,* 886 F.Supp. 1048, 1055 (W.D.N.Y.1995).

The possibility of a conflict of interest is raised in that portion of the minutes of the motion to withdraw the guilty plea where the judge asked Ronson to comment on the merits of Guzman's claim that Ronson had provided ineffective assistance by coercing him into pleading guilty. A conflict of interest may exist when an attorney is asked to speak on the record with regard to a motion brought by his client that implicates the attorney's own conduct. *See Lopez v. Scully,* 58 F.3d 38, 40 (2d Cir.1995); *People v. Rozzell,* 20 N.Y.2d 712, 713, 229 N.E.2d 452, 453, 282 N.Y.S.2d 775 (N.Y.1967) (recognizing the difficulty "for counsel effectively to represent the right of the accused to have judicial consideration given to his motion to withdraw a plea of guilty, where counsel is himself called as a witness in an inquiry which penetrates deeply into the intraprofessional relationship"). An "actual conflict" exists only when "the attorney's and

defendant's interest diverge with respect to a material factual or legal issue or to a course of action," *United States v. Moree*, 220 F.3d 65, 69 (2d Cir.2000) (citation and internal quotations omitted), not for every "routine disagreement" with appointed counsel that arises, *United States v. White*, 174 F.3d 290, 296 (2d Cir.1999). Prejudice is presumed where an actual conflict that adversely affected the attorney's performance is shown to exist. *Cuyler v. Sullivan*, 446 U.S. 335, 348–49, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

In the colloquy, Ronson characterized the submission as a "pro se motion to withdraw the guilty plea," that was "coherent[ly]" written, and summarized the grounds set forth therein. Resp. Ex. D at 6, 8–10. The prosecutor then undertook a lengthy and heated refutation of the grounds raised in the motion. This commentary ended with the statement, "Now as to his other claims, and for him to somehow say that ... some improper contact between myself and Mr. Ronson is absolutely ridiculous," to which Ronson replied, "I absolutely agree with that." *Id.* at 18.

When the prosecutor had finished his recitation, the trial judge stated:

I'm turning to you Mr. Ronson to the extent that factual issues have been raised, some of which implicate your conduct ... If there's anything you would wish to challenge or contradict with respect to [the prosecutor's] representation as to improper conduct, I would ask you to make a record now.

*Id.* at 19–20. After Ronson detailed the nature of his discussions with the prosecutor on Guzman's behalf, the trial judge asked him whether there were "any others, and again I'm not trying to intrude on the confidential aspect of your relationship with Mr. Guzman, but are there any other communications that argubly [sic] that would support the claim of coersion [sic] on Mr. Guzman's part?" *Id.* at 22. Ronson responded:

No. There's an error in the—his characterization of his exposure after trial, and

that appears in two pages of his letter which supports his motion. He faces twenty-five years in prison. That's a huge amount of time. He does not face twenty-five years to life in prison. As for anything else, unfortunately I believe my communication with him are protected by the attorney/client privilege at this point.

*Id.*

Throughout the hearing, Ronson obviously attempted to heed the tenuous line between advocacy for his client, the professional obligations not to make false proffers to the court, and protecting his own professional reputation. However, under repeated questioning from the trial judge about Ronson's own conduct, Ronson crossed the line into defending himself at the expense of his client's motion. The hearing concluded as follows:

Ronson: My position is that whatever the Court decides the merits are of the plea—the motion to withdraw the plea. There may be merit to the defendant's—not merit to his position I coerced him, but I believe that may raise an issue that there's a conflict in my continued representation of Mr. Guzman at this point ... If I was in receipt of information that the defendant was disoriented, and unable to proceed to hearing and trial, I would have made that plain to the Court.

Court: The motion to withdraw the plea is denied ....

*Id.* at 27–29.

The trial judge's findings that the plea had been neither coerced nor involuntary, and his consequent denial of the motion to withdraw, were influenced by the attorney's necessarily self-serving statements regarding both the effect of the medication on Guzman and whether or not the plea had been coerced. Ronson's responses to the trial judge's questions regarding Guzman's ineffective assistance motion created an actual conflict of interest between attorney and client that deprived Guzman of the right to a full and fair determination of his claim. *See Strickland*, 466 U.S. at 692,

104 S.Ct. 2052; *Cuyler,* 446 U.S. 335, 100 S.Ct. 1708; *Lopez v. Scully,* 58 F.3d 38, 41 (2d Cir.1995) (holding that a pro se motion to withdraw a guilty plea based on alleged attorney coercion created an actual conflict of interest).

 Representation by conflicted counsel is tantamount to no representation at all. *See Strickland,* 466 U.S. at 686, 692, 104 S.Ct. at 2064. At the moment when he began to answer questions on the coercion issue about his interaction with Guzman leading up to the guilty plea, Ronson stopped acting as an advocate for his client. Yet the withdrawal of a guilty plea before sentencing is a critical stage of prosecution in which defendants have a Sixth Amendment right to representation. *See Lopez v. Scully,* 58 F.3d 38, 41 (2d Cir.1995) (recognizing that defendants have constitutional right to counsel through critical stage of sentencing); *United States v. Sanchez–Barreto,* 93 F.3d 17, 22 (1st Cir.1996) (withdrawal of guilty plea is critical stage); *United States v. Crowley,* 529 F.2d 1066, 1069 (3d Cir.), *cert. denied,* 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976) (same). Rather than ask Ronson to comment on the merits of his client's claims, the trial court should have appointed new counsel to represent Guzman in the motion to withdraw his plea. *See Lopez v. Scully,* 58 F.3d 38, 41 (2d Cir.1995) (finding that counsel had an actual conflict of interest once defendant raised attorney coercion as grounds to withdraw guilty plea); *Rozzell,* 20 N.Y.2d at 713, 282 N.Y.S.2d 775, 229 N.E.2d at 453 (holding that "it would seem to have been needful to assign other counsel" where defense attorney was asked to comment on the merits of defendant's pro se motion to withdraw guilty plea); *People v. Santana,* 156 A.D.2d 736, 737, 550 N.Y.S.2d 356, 358 (N.Y.App.Div.1989) ("If the court deemed it necessary to obtain factual information from defense counsel, it should have assigned the defendant different counsel before doing so. Moreover, once counsel took a position adverse to the defendant, the court should not have proceeded to determine the motion without first assigning the defendant new counsel.") (citation omitted). Failing to do so violated Guzman's Sixth Amendment rights.

Under these circumstances, prejudice is presumed. As the Supreme Court has recognized, "a court must presume that counsel's divided loyalties adversely affected his performance on behalf of his client. When the effects of a constitutional violation are not only unknown but unknowable, the Constitution demands that doubts be resolved in favor of a criminal defendant." *Bonin v. California,* 494 U.S. 1039, 1045, 110 S.Ct. 1506, 1509, 108 L.Ed.2d 641 (1990) (Marshall, J., dissenting from the denial of certiorari).

### Conclusion

The case is remanded to the state court for a hearing on Guzman's motion to withdraw his guilty plea, at which he shall be represented by appointed counsel other than the attorney whose conduct Guzman seeks to challenge.

It is so ordered.