**UNITED STATES of America, Appellee,**

v.

**Miguel PENA, a/k/a Bernardo Pena, Defendant–Appellant.**

**No. 114, Docket 90–1715.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 20, 1991.

Decided April 7, 1992.

Mark B. Gombiner, New York City (The Legal Aid Soc., Federal Defender Services Appeals Unit, of counsel), for defendant-appellant.

Patrick J. Fitzgerald, Asst. U.S. Atty., S.D.N.Y., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., James B. Comey, Asst. U.S. Atty., S.D.N.Y.), for appellee.

Before: VAN GRAAFEILAND, MESKILL, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Miguel Pena appeals from a judgment of the United States District Court for the Southern District of New York, Shirley Wohl Kram, *Judge*, entered November 30, 1990. Pena was convicted of possessing approximately two kilograms of cocaine with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (1988). The district court refused Pena's request for a hearing on the legality of the search that resulted in discovery of the cocaine in question, and arguably prompted subsequent incriminatory statements.

We remand for a suppression hearing.

### Background

The government alleges that on or about May 16, 1989, the Drug Enforcement Agency ("DEA") received a tip from a confidential informant that an automobile with Rhode Island license plates would be driven to a building located at 2625 Sedgwick Avenue, Bronx, New York, where the occupants of the car would purchase cocaine. The government's complaint asserted that the confidential informant "is highly reliable and has provided information in the past leading to the arrest of narcotics traffickers and the seizure of contraband," and that a three-building complex of which 2625 Sedgwick Avenue is a component "is known to the DEA as a place where narcotics trafficking takes place."

The DEA established surveillance at the address. At approximately 7:00 p.m. that evening, a black 1978 Chevrolet bearing Rhode Island license plates double-parked

in front of the building. Two Hispanic males, Miguel Pena and Francisco Vasquez Santana, emerged from the car and entered the building. One hour later, Pena and Santana returned to the car. Pena was carrying a large white bag with black lettering that appeared to contain objects of significant weight. Santana entered the passenger seat of the automobile, while Pena entered the back seat. The DEA agents observed Pena "working in the back seat" for about ten minutes before returning to the driver's seat and pulling away. In the next block, the agents stopped the car. They observed that the white bag was now empty, and that a screwdriver was lying on the floor of the car where Pena had been working. The agent removed the panel covering the rear door near where Pena had been working, and found two packages of cocaine.

Pena was arrested, either immediately before or immediately after the car was searched, and given *Miranda* warnings at the scene. When Pena was brought to DEA headquarters in Manhattan, he was given another set of *Miranda* warnings. Waiving his right to remain silent, Pena told the agents that the seized cocaine belonged to him, that he had purchased it at the building, and that Santana was not involved in the transaction.

In an indictment filed June 1, 1989, Miguel Pena was charged with one count of conspiracy to possess with intent to distribute approximately two kilograms of cocaine, in violation of 21 U.S.C. § 846 (1988), and one count of possession with intent to distribute approximately two kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (1988). Santana was not indicted.

Prior to trial, Pena moved to suppress the statements he had made to DEA agents following his arrest, claiming that he had not received *Miranda* warnings. After a hearing, the district court denied the motion in a memorandum opinion and order, finding that Pena had been properly warned and that his statements were voluntary. This ruling is not appealed.

Pena also moved to suppress, as the fruit of an illegal search, both his postarrest statements and the cocaine that was seized from the automobile, contending that the government had failed to establish probable cause to arrest him. His motion was accompanied by an affidavit that stated, *inter alia*: "At the time of my arrest I was in a car. It was not my car." In a memorandum opinion and order, the district court denied the motion, finding that "[t]he facts alleged in the complaint clearly establish the requisite probable cause." Furthermore, the district court considered Pena's affidavit in support of the motion to be "conclusory and bereft of factual detail," thus obviating the need for a hearing. Finally, the district court held that Pena lacked standing to assert a Fourth Amendment violation because "defendant could not have had an objectively reasonable expectation of privacy in the rear door of a car that was not his."

Soon thereafter, Pena filed a new affidavit and moved for reconsideration. The affidavit related Pena's version of events:

4. On the day of my arrest, May 16, 1989[,] I left work at approximately 5:00 P.M. I then went with my friend Francisco Vasquez Santana to the home of Danilo Perez, his cousin at 2645 [sic] Sedwick [sic] Avenue, Apt. 3B for the purpose of buying a 1978 Chevrolet, owned by Francisco's brother Jose Vasquez. The price for the vehicle was between $1,000.00 and $1,500.00. My intent was to purchase the vehicle at the lowest possible price and ship it to Santo Domingo, where I could have it resold for up to $30,000.00 Dominican pesos.*1

5. I drove the car around for approximately an hour and I returned at approximately 7:30 p.m. Since[ ] it was heavily raining that day, Danilo told me I could borrow the car and drive home and to bring the entire purchase price of $1,000.00 dollars the next morning.

6. Francisco exited the building with an umbrella and I exited the building with Francisco's chihuahua wrapped in a plastic bag.

7. It was raining heavily with very low visibility and I drove slowly for four

blocks, when out of nowhere approximately eight unidentified vehicles blocked my path.

8. Individuals later identified as DEA agents ordered both me and Francisco out of the car while pointing guns at us. They then proceeded to search the car. No contraband, weapons or beepers were in plain view. The only thing they recovered initially was the dog.*2

9. They then proceeded to rip the car apart. I did not see what they recovered. The car was never impounded.

* 1 I note I had the $500.00 deposit in my pocket at the time of my arrest. I would further note I would from time to time buy and sell vehicles to supplement my modest income.

* 2 The dog was later returned.

The district court denied the motion in a memorandum opinion and order, reaffirming its rulings with respect to probable cause and standing.

At a jury trial conducted June 11–13, 1990, Pena was convicted on both counts of the indictment. On June 22, 1990, the district court *sua sponte* ordered a judgment of acquittal on the conspiracy count, citing insufficient evidence of an agreement. On November 27, 1990, the district court sentenced Pena to seventy months in prison, followed by four years supervised release, and imposed a $5,000 fine and a $50 special assessment.

This appeal followed.

## Discussion

The sole issue on appeal is whether the district court erred in admitting the cocaine seized during the search of Pena's car, and the subsequent statements made by Pena. In contesting the admission of this evidence, Pena contends that:

(1) Having taken permanent possession of the car just before the search, Pena has "standing" to challenge the legality of the search.

(2) Given the absence of probable cause either to arrest Pena or search the car, the search of the car was illegal, and both the cocaine and Pena's statements

are illegally-obtained fruits of that search.

## A. "Standing".

▪ Although Pena presents his argument in terms of "standing," " 'the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing.' " *United States v. Paulino*, 850 F.2d 93, 96 (2d Cir.1988) (quoting *Rakas v. Illinois*, 439 U.S. 128, 139, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978)), *cert. denied*, 490 U.S. 1052, 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989); *see also United States v. Osorio*, 949 F.2d 38, 40 (2d Cir.1991). The outcome is likely to be the same under either theory, but this approach promotes analytical clarity. *See Rakas*, 439 U.S. at 138–39, 99 S.Ct. at 427–28. The defendant seeking suppression bears the burden upon this issue. *See Osorio*, 949 F.2d at 40 (citing *Rakas*, 439 U.S. at 131 n. 1, 99 S.Ct. at 424 n. 1; *United States v. Davis*, 932 F.2d 752 (9th Cir. 1991)); *United States v. Ponce*, 947 F.2d 646, 649 (2d Cir.1991), *cert. denied*, ⎯ U.S. ⎯; 112 S.Ct. 1492, 117 L.Ed.2d 633 (1992); *Paulino*, 850 F.2d at 96. *But see United States v. Garcia*, 897 F.2d 1413, 1418 (7th Cir.1990) (defendant asserted Fourth Amendment interest as borrower of vehicle; "[t]he burden is on the government to prove by a preponderance that property is not used with the permission of the owner").

"We review the question of whether a defendant's Fourth Amendment rights were violated by a governmental action *de novo*, although we review the district court's determination of underlying facts for clear error." *Osorio*, 949 F.2d at 40 (citing *Davis*, 932 F.2d at 756). The guiding legal standard is well settled:

First, the person challenging the search must demonstrate a subjective desire to keep his or her effects private; and, second, the individual's subjective expectation must be one that society accepts as reasonable.

*Paulino,* 850 F.2d at 97 (citing *California v. Greenwood,* 486 U.S. 35, 39, 108 S.Ct. 1625, 1628, 100 L.Ed.2d 30 (1988); *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979)).

In his first, bare-bones affidavit, Pena simply asserted that "[i]t was not my car." This statement would provide no basis for a finding that Pena's Fourth Amendment rights were implicated. One month after the district court issued its initial memorandum opinion and order, however, Pena submitted the more detailed affidavit quoted *supra* and moved for reconsideration. The district court, in a second memorandum opinion and order, reiterated its prior holding that "defendant may not challenge [the search] because the car did not belong to him," and concluded: "If anything, the affidavit reinforces the holding by making his non-ownership of the car a central part of his alibi." The district court ruled, in other words, that whatever the subjective expectation of privacy asserted in Pena's second affidavit, that expectation was objectively unreasonable in the case of a nonowner of a vehicle.

■ It is not the law, however, that only the owner of a vehicle may have a Fourth Amendment privacy interest therein that is protected against governmental invasion. Rather, the borrower of an automobile can possess such an interest. *See, e.g., Ponce,* 947 F.2d at 649 ("To mount a challenge to a search of a vehicle, defendants must show, among other things, a legitimate basis for being in it, such as permission from the owner.") (citing *United States v. Ochs,* 595 F.2d 1247, 1253 (2d Cir.), *cert. denied,* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979)); *United States v. Rubio–Rivera,* 917 F.2d 1271, 1275 (10th Cir.1990) ("Where the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle.") (collecting cases); *United States v. Lee,* 898 F.2d 1034, 1038

(5th Cir.1990) (defendants entitled to challenge search of rented truck lent to them by its lessee).

Whatever the status of the person asserting a Fourth Amendment claim regarding a search of a vehicle, it is clear that in this circuit, the issue is whether the claimant "had a reasonable expectation of privacy in the area of the vehicle searched." *Paulino,* 850 F.2d at 97; *see also United States v. Chuang,* 897 F.2d 646, 649 (2d Cir.) ("we focus on whether defendant has established a legitimate expectation of privacy in the area searched"), *cert. denied,* — U.S. —, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990); *United States v. Smith,* 621 F.2d 483, 486 (2d Cir.1980) ("the threshold question ... is whether the defendant had a legitimate expectation of privacy in the area searched or in the articles seized"), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981). This focus is faithful to the Supreme Court's ruling in *Rakas* that the determinative issue is "whether [defendant] had a legitimate expectation of privacy in the particular areas of the automobile searched." 439 U.S. at 148, 99 S.Ct. at 433.

Tested against these principles, the record was not adequately developed to permit the district court, or us on this appeal, to determine whether Pena was entitled to assert a Fourth Amendment interest in the door panel from which the cocaine was seized in this case. *Cf. Ponce,* 947 F.2d at 648 (contraband seized from door panels in vehicle, no specific attention given to location issue); *United States v. Garcia,* 897 F.2d at 1418–19 (protectible Fourth Amendment interest in door panel of borrowed truck found without specific discussion of location issue; defendant had borrowed vehicle from criminal confederate who presumably would endorse any effort to conceal narcotics); *United States v. Blanco,* 844 F.2d 344, 349–50 (6th Cir.) (same, but location issue specifically addressed), *cert. denied,* 486 U.S. 1046, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988).[1]

---

1. *Blanco* might be read to indicate that the defendant's interest in the particular location searched in a vehicle is not significant. The court in *Blanco* stated:

Pena's detailed affidavit stated that he had "borrow[ed]" the car "to drive home" because of the rain, with an agreement to conclude purchase of the vehicle the following morning. It would clearly be unreasonable to anticipate that the *ordinary* borrower of a car would have the right to peel back an aesthetic carpeting or covering, remove screws with the aid of a screwdriver, lift off the door panel, slip items into the door cavity, and repeat the process in reverse. It may be, however, that Pena will be able to establish a legitimate Fourth Amendment entitlement upon further exploration of the particular facts of this case. In any event, he has shown enough to be entitled to a hearing on the issue. *Cf. Combs v. United States*, 408 U.S. 224, 227, 92 S.Ct. 2284, 2286, 33 L.Ed.2d 308 (1972) (per curiam) (because "the record now before us is virtually barren of the facts necessary to determine" validity of petitioner's Fourth Amendment interest in searched premises, case remanded for further proceedings by district court).

Upon remand, accordingly, the district court should conduct a suppression hearing. The first issue to be determined will be whether Pena had a protectible Fourth Amendment interest in the door panel from which the cocaine was seized, an issue on which he will bear the burden. If, and only if, he sustains that burden, the court should next address the issue of probable cause, to which we now turn in the interest of providing a comprehensive guide for the remand hearing. *See United States v. Borello*, 766 F.2d 46, 60 n. 23 (2d Cir.1985).

**B.** *Probable Cause.*

In the event that Pena is determined to be entitled to assert a Fourth Amendment

claim, the suppression hearing on remand must then address the question of probable cause.[2]

■ That question, we note, relates not only to the cocaine seized from the rear door panel of the automobile, but also to Pena's postarrest statements. As stated earlier, the district court ruled after a hearing that Pena had been given proper *Miranda* warnings and that his incriminating statements were voluntary, and Pena has not contested that determination on appeal. The court's resolution of the *Miranda* issue, however, does not preclude a determination that Pena's statements were nonetheless the "fruit" of a prior illegal arrest, *see Brown v. Illinois*, 422 U.S. 590, 600–05, 95 S.Ct. 2254, 2260–63, 45 L.Ed.2d 416 (1975), or of a prior illegal seizure of evidence, *see United States v. Parker*, 722 F.2d 179, 185–86 (5th Cir.1983), *overruled on other grounds sub nom., United States v. Hurtado*, 905 F.2d 74, 75–76 (5th Cir. 1990) (in banc), and thus inadmissible. The issue must be determined on the basis of all the facts of record, and the *Miranda* warnings are an important, but not determinative, factor. *See Brown*, 422 U.S. at 603–04, 95 S.Ct. at 2261–62.

■ Turning to the merits of the probable cause issue, the government contends on appeal that no hearing as to probable cause was initially required, and we should therefore not remand for such a hearing. We disagree.

As we have stated:

[O]n a motion to suppress on the ground of illegal arrest without a warrant the

---

We think the district court was incorrect ... in holding that society is not prepared to recognize a bailee's expectation of privacy in the door panels of a rented automobile. Implicit in the district court's determination on this point is the idea that if Mr. Fresneda had stored the cocaine in the glove compartment or under a seat, he would have had standing to object to its seizure. We do not understand why society should be thought less willing to protect an expectation of privacy in a good hiding place than in a poor one.

844 F.2d at 349–50. As stated *supra,* we regard *Rakas* as mandating attention to the Fourth

Amendment claimant's expectation of privacy in the specific area searched, and decline to adopt any intimation to the contrary in *Blanco.*

**2.** The government asserts that at the conclusion of the trial, the district court "made a factual finding that probable cause had been established by the [trial] testimony." We are unpersuaded. The trial did not, and could not be expected to, explore the probable cause issue, especially the basis for the DEA's reliance upon the information provided by the confidential informant.

burden is on the Government to show that there was probable cause for the arrest.... Obviously, however, the moving party must make a preliminary showing as to the circumstances of the arrest sufficient to raise a question as to its legality. But the question of how far, if at all, the moving defendant must go beyond showing that the arrest was without a warrant is not without its difficulties.

*United States v. Rivera,* 321 F.2d 704, 706 n. 1 (2d Cir.1963).

In addition, "[a]n evidentiary hearing on a motion to suppress ordinarily is required if 'the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" *United States v. Licavoli,* 604 F.2d 613, 621 (9th Cir.1979) (quoting *United States v. Ledesma,* 499 F.2d 36, 39 (9th Cir.), *cert. denied,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974)), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980); *see also United States v. Smith,* 495 F.2d 668, 670 (10th Cir.1974); *Jackson v. United States,* 336 F.2d 579, 580 (D.C.Cir.1964) (per curiam). Further, when the government invokes a confidential informant in support of its assertion of probable cause, it does not suffice to provide "a mere conclusory statement that gives the [factfinder] virtually no basis at all for making a judgment regarding probable cause." *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527 (1983).

Here, the government's complaint stated only that the confidential informant "is highly reliable and has provided information in the past leading to the arrest of narcotics traffickers and the seizure of contraband," without further specification. The conduct by Pena and Salazar observed by the government agents—double-parking outside an apartment building, emerging with a package, and spending ten minutes or so in the back seat of a car engaged in some sort of activity before departure— was hardly suspicious except in the context of the information provided by the confidential informant. *See Gates,* 462 U.S. at

243 n. 13, 103 S.Ct. at 2335 n. 13 (" 'seemingly innocent activity became suspicious in light of the initial tip' ") (quoting dissenting opinion below).

█ We believe that this combination of circumstances, viewed in the context of the informant's tip, provided the detaining officers with reasonable suspicion to make a *Terry* stop. *See Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 2415–17, 110 L.Ed.2d 301 (1990); *United States v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985) (citing *United States v. Brignoni–Ponce,* 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975)); *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). All that was added thereafter, on the other hand, was the asserted discovery of an empty bag and a screwdriver (presumably used by Pena to remove and reposition the door panel during the period when he first entered the car) in the back seat of the detained automobile. The screwdriver was not placed in evidence at the suppression hearing or trial, apparently because it was inadvertently left in the vehicle when the car was returned to a friend of Pena, and did not appear in any of the police photographs of the car's interior.

Taking all these circumstances together, there was an adequate question with respect to the existence of probable cause for the search of the vehicle to warrant a hearing on the issue, and the district court abused its discretion in refusing to conduct such a hearing. The standard of decision for such a hearing is akin to that provided in *Gates* for a magistrate considering an application for a warrant premised to some degree upon a tip by a confidential informant. The Court in *Gates* endorsed a "totality-of-the-circumstances approach," 462 U.S. at 230, 103 S.Ct. at 2328, and went on to specify that: "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair proba-

bility that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332; *see also United States v. Feliz–Cordero,* 859 F.2d 250, 252–53 (2d Cir.1988).

■ The confidential informant need not be produced by the government, or identified, at the suppression hearing. *See McCray v. Illinois,* 386 U.S. 300, 311–13 & n. 11, 87 S.Ct. 1056, 1062–64 n. 11, 18 L.Ed.2d 62 (1967). Ordinarily, the officer who received the tip from the informant will testify and be subject to cross-examination. *See, e.g., id.* at 313, 87 S.Ct. at 1065; *United States v. Manley,* 632 F.2d 978, 984–85 (2d Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). This process will allow the informant's reliability, established heretofore in this case only by a conclusory sentence in the government's complaint, to be adequately tested. *See, e.g., Rivera v. United States,* 928 F.2d 592, 597 (2d Cir.1991) (probable cause adequately based upon tip by informant whose "information in other matters had led to raids in the Bronx in October 1986, resulting in the seizure of weapons and large quantities of narcotics, and the arrest and prosecution of drug suspects"); *United States v. Benevento,* 836 F.2d 60, 70 (2d Cir.1987) (probable cause properly founded, in part, upon "specific statements from the government's confidential informants that provided key details of various aspects of the narcotics conspiracy"), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988); *United States v. Gonzalez,* 835 F.2d 449, 451 (2d Cir.1987) (per curiam) (hearing established that "informant here was known to a member of the [police] and had proven his reliability over a period of nearly three years; two of his tips had resulted in arrests and convictions for narcotics and weapons offenses"); *United States v. Thomas,* 757 F.2d 1359, 1367–68 (2d Cir.1985) (no probable cause, despite informant's "established" reliability, because tip was stale), *cert. denied,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985), 479 U.S. 818, 107 S.Ct. 78, 93 L.Ed.2d 34 (1986); *United States v. Vasquez,* 605 F.2d 1269, 1281–82 (2d Cir.1979) ("Considerable evidence was provided to support the affiant's conclusion that the informants were reliable."), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980).

### C. *Disposition.*

As stated earlier, the suppression hearing on remand must first address the question whether Pena had any protectible Fourth Amendment interest in the rear door panel of the vehicle from which the cocaine was seized. If this inquiry is answered affirmatively, the district court must next determine the issue of probable cause, addressing the "totality of the circumstances," *Gates,* 462 U.S. at 230, 103 S.Ct. at 2328, known to the DEA agents when they conducted the search of the rear door panel, including their prior experience with the confidential informant.

If both determinations are adverse to the government, the court must then determine whether Pena's postarrest statements were the tainted "fruit" of the Fourth Amendment violation. He would be entitled, in any event, to a new trial at which the cocaine seized from the vehicle could not be introduced in evidence; the evidentiary use of his postarrest statements would depend upon the outcome of this further inquiry.

If it is determined that Pena did not have a protectible Fourth Amendment interest in the rear door panel of the vehicle that he was driving, or that the DEA agents had probable cause to search that panel, Pena's conviction will stand. *See United States v. Medlin,* 798 F.2d 407, 410–11 (10th Cir. 1986); *United States v. Perez,* 700 F.2d 1232, 1237–38, 1240 (8th Cir.1983); *Jackson,* 336 F.2d at 580–81; *cf. Battle v. United States,* 345 F.2d 438, 440 (D.C.Cir.1965) (per curiam) (failure to conduct suppression hearing compounded by "two other serious errors," conviction reversed and case remanded for new trial).

### Conclusion

The case is remanded for a prompt suppression hearing consistent with this opinion. The mandate shall issue forthwith.