UNITED STATES of America,

v.

**Donald Drapper ROBINSON, Defendant.**

**No. CR 00–145(ADS).**

United States District Court, E.D. New York.

July 13, 2001.

Alan Vinegrad, United States Attorney, Eastern District of New York, Central Islip, By Richard P. Donoghue, Assistant United States Attorney.

Edward P. Jenks, Mineola, for the Defendant.

## MEMORANDUM OF *DECISION AND ORDER*

SPATT, District Judge.

### I. *BACKGROUND*

Presently before the Court is a motion by the defendant to suppress statements made by him to agents of the Drug Enforcement Agency ("DEA") on the grounds that: (1) although the defendant was read his *Miranda* rights, he did not understand those rights; and (2) the defendant made the incriminating statements based on

promises of leniency made to him by the law enforcement officials who interviewed him. In the alternative, the defendant requests that the Court grant a hearing to determine: (1) whether he was adequately advised of his constitutional rights; and (2) whether he intelligently waived those rights.

The facts alleged by the defendant are sparse. He states that on January 26, 2000, DEA agents arrested him and questioned him. He further alleges that he "did not understand my right to remain silent or to consult an attorney prior to the commencement of questioning, nor was I aware of these rights at the time I was questioned. Further, I was promised a better result in my case if I cooperated or told on Marques Bradley."

Notably, the defendant does not point to the specific statements he is asking this Court to suppress. He simply attaches to his motion papers a copy of a DEA report that describes the defendant's post-arrest statements. The Court will assume that the defendant seeks to suppress every post-arrest statement mentioned in the DEA report. Those statements are listed and paraphrased below:

1) For the previous four or five years, he had been purchasing approximately 3 ounces of cocaine each week from Markese Bradley.

2) Bradley delivered the cocaine to the defendant's house, and that his son was present for several of the deliveries.

3) The defendant informed the agents and officers that he had cocaine in his bedroom and two small bags of cocaine in a red mug in his dresser.

4) The brown bag the agents found in the defendant's closet held two small plastic wrappings containing baking soda, which the defendant had removed from his son's room approxi-

mately one year earlier upon learning that his son was selling sham cocaine to people in the neighborhood.

5) For approximately one year, he provided his son with cocaine to sell.

6) He cooked the cocaine in the microwave located in his kitchen. The jar, strainer, metal rod and baking soda the agents found in the kitchen were used to cook the cocaine. The paraphernalia they recovered from his bedroom, including the grinder, razor, plastic container, plastic baggies, scales, and calculators belonged to him. The cash in his dresser drawer included proceeds from drug sales.

7) He supplies a friend with 1½ ounces of cocaine which that friend then sells in Amityville.

8) During the three or four weeks preceding his arrest, he had been purchasing his cocaine from two men in the Bronx, because Markese Bradley appeared to have become suspicious of him.

The government opposes the defendant's motion, argues that the statements should not be suppressed, and asserts that a hearing is unnecessary. Unlike the defendant, the government provides some factual allegations in support of its legal arguments. The government states that in or about July 1999, federal and state law enforcement agencies began investigating narcotics distribution by Markese Bradley, one of the defendant's co-defendants. On January 25, 2000, United States Magistrate Judge E. Thomas Boyle issued an arrest warrant for the defendant's son, Drapper Robinson, and a search warrant for the defendant's residence. The government alleges that federal and state law enforcement agents executed both warrants on January 26, 2000.

According to the government, the defendant and his son were at home when the law enforcement agents arrived. The government alleges that the defendant's son showed the agents his bedroom as well as that of his father. The government states that the agents and officers recovered "marijuana, glassine baggies, and other narcotics paraphernalia" from the bedroom belonging to the defendant's son. According to the government, the agents and officers recovered from the defendant's bedroom "two scales, plastic baggies, a cocaine grinder with white powder residue, a mug containing two plastic bags filled with white powder, a paper bag containing two additional plastic bags filled with white powder, a razor blade with white powder residue and three cards with white powder residue." The government further alleges that the agents and officers searched the kitchen where they recovered "a clear glass jar with white powder, a strainer with white powder residue, a metal rod caked with a white substance and a box of baking soda." The law enforcement officials arrested the defendant at the conclusion of the search.

The government contends that while they were in the defendant's home, Special Agent Robert Yoos of the DEA advised the defendant of his rights using "DEA Form 13a". The government alleges that the "defendant stated that he understood his rights and that he was willing to provide a statement without the assistance of counsel." Thereafter, according to the government, the defendant made the statements described above.

The government states that after the defendant made his oral statement, the agents transported him to the Freeport Police Department for processing. Once at the stationhouse, the defendant allegedly reiterated the information he had provided in his home and signed a written statement describing his cocaine distribution activities. The government explains that a portion of the defendant's written signed statement reads. "I have not been promised anything for these statements nor have I been coerced into making any statements."

The government asserts that no law enforcement official promised the defendant anything in exchange for his statements. The government acknowledges that the agents may have informed the defendant that any cooperation would be reported to the United States Attorney but argues that such comments to a defendant do not render the defendant's subsequent statements involuntary.

## II. *DISCUSSION*

An evidentiary hearing on a motion to suppress "ordinarily is required 'if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" *United States v. Pena*, 961 F.2d 333, 339 (2d Cir.1992) (citations omitted). A defendant seeking to suppress evidence bears the burden of showing the existence of disputed issues of material fact. *See Pena*, 961 F.2d at 338. Indeed, a district court is not required to hold an evidentiary hearing if the defendant's "moving papers did not state sufficient facts which, if proven, would have required the granting of the relief requested." *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir.1969). Further, a court need not hold an evidentiary hearing when the "defendant's allegations are general and conclusory or are based upon suspicion and conjecture." *United States v. Wallace*, 1998 WL 401534 *9 (S.D.N.Y. July 17, 1998) (citations omitted).

When opposing a defendant's motion to suppress post-arrest statements

on the ground that they were involuntarily made, the government is required to prove the defendant's voluntary waiver of *Miranda* rights by a preponderance of the evidence. *See United States v. Villegas,* 928 F.2d 512, 518–19 (2d Cir.1991). "To prove a valid waiver, the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal,* 47 F.3d 539, 542 (2d Cir.1995) (per curiam). Only if the totality of the circumstances "reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *See Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).

■ Promises of leniency, without more, do not invalidate a *Miranda* waiver. *See United States v. Guarno,* 819 F.2d 28, 31 (2d Cir.1987). Although material misrepresentations based on unfulfillable or other improper promises might overbear a defendant's will, *see Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472–73, 25 L.Ed.2d 747 (1970); *United States v. Ruggles,* 70 F.3d 262, 265 (2d Cir.1995), "a confession is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials.'" *United States v. Bye,* 919 F.2d 6, 9 (2d Cir.1990) (quoting *United States v. Guarno,* 819 F.2d 28, 31 (2d Cir.1987)). Thus whether promises of leniency overbore the defendant's will in this case, thereby rendering his waiver involuntary, depends on the promises made.

■ The Court also should consider the defendant's background and experience when determining whether the totality of the circumstances "reveals an uncoerced choice," *Moran,* 475 U.S. at 421, 106 S.Ct.

1135; *see United States v. Anderson,* 929 F.2d 96, 99 (2d Cir.1991). Thus, the Court's decision should account for the defendant's age, intelligence, education, and experience with the criminal justice system. *See Ruggles,* 70 F.3d at 265.

■ Here, there is not dispute that Special Agent Yoos read the defendant his *Miranda* warnings. However, the parties disagree about whether the defendant voluntarily waived his *Miranda* rights. As noted above, one of the factors the Court must consider when determining whether the waiver was voluntary is the promises the law enforcement officials made to the defendant. This case presents a factual dispute in that regard, because the defendant alleges that promises were made, and the government contends they were not. Thus, although the defendant's allegations of the circumstances surrounding his confession are not as definite, specific, and detailed as they could have been, *see Pena,* 961 F.2d at 339, there are disputed issues of fact regarding the voluntariness of the waiver. Accordingly, the Court cannot decide the defendant's motion to suppress without an evidentiary hearing. Thus, United States Magistrate Judge Arlene Lindsay is requested to conduct a suppression hearing at her earliest convenience.

### III. CONCLUSION

Having reviewed the submissions of the parties, and having given them an opportunity for oral argument, it is hereby

**ORDERED,** that the defendant's application for a suppression hearing to determine the voluntariness of statements he made to law enforcement officials is **GRANTED;** and it is further

**ORDERED,** that the defendant's motion to suppress statements made by him is **DEFERRED,** pending the outcome of the suppression hearing; and it is further

**ORDERED,** that this case is referred to United States Magistrate Judge Arlene Rosario Lindsay to conduct a suppression hearing at her earliest convenience.

**SO ORDERED.**